# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No._____


EDWARD J. KLEN,
STEPHEN J. KLEN,
MARJORIE E. KLEN
DIVERSE CONSTRUCTION, INC. (A Colorado Corporation), and
HOLSTEIN SELF-SERVICE STORAGE, LLC (Organized under Colorado Law)

      Plaintiffs,

v.

CITY OF LOVELAND, COLORADO (A Colorado Municipal Corporation),
THOMAS HAWKINSON, CITY OF LOVELAND BUILDING OFFICIAL, in his individual and official capacities,
GREG GEORGE, CITY OF LOVELAND COMMUNITY SERVICES DIRECTOR, in his individual and official capacities,
DONALD WILLIAMS, CITY OF LOVELANDMANAGER, in his official capacity,
RICHARD HOSKINSON, CITY OF LOVELAND BUILDING INSPECTOR, in his individual and official capacities,
JOHN R. DUVAL, CITY OF LOVELAND ATTORNEY, in his individual and official capacities,
KRISTINE BURNS, CITY OF LOVELAND BUILDING PERMIT COORDINATOR, in her individual and official capacities,
DAVID SPRAGUE, CITY OF LOVELAND PLANS REVIEWER, in his individual and official capacities,
JEFF McKEE, CITY OF LOVELAND PLANNING TECHNICIAN, in his official capacity,
CINDY WORAYETH, CITY OF LOVELAND EMPLOYEE, in her individual and official capacities,
JOHN DOE, and/or JANE DOE, in their individual and official capacities.

      Defendants.

_____

## VERIFIED COMPLAINT AND JURY DEMAND
_____

COME NOW the Plaintiffs, Edward J. Klen, Stephen J. Klen, Marjorie E. Klen, Diverse Construction, Inc., and Holstein Self-Service Storage, LLC, by and through their attorneys of record, The Law Offices of John Kenneth Pineau, P.C., and the Law Offices of Ingrid J. DeFranco, and hereby submit their Verified Complaint and Jury Demand, alleging and averring as follows:

1. This action is brought and jurisdiction lies pursuant to the damages suffered by Plaintiffs and caused by Defendants' violations of Plaintiffs' rights as guaranteed by law, particularly, 42 U.S.C. § 1983 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  This Court has federal question jurisdiction under 28 U.S.C. § 1331.

2. Plaintiffs also invoke the Court's supplemental jurisdiction over their state tort claims pursuant to 28 U.S.C. § 1391.

3. The violations of Plaintiffs' rights which form the basis for this suit occurred entirely within the State of Colorado.  Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391.

4. Plaintiff EDWARD J. KLEN (hereinafter, Ed Klen or Ed) is a citizen of the United States, resident of the State of Colorado, and principal in Plaintiffs Diverse Construction Company and Holstein Self-Service Storage, LLC.

5. Plaintiff STEPHEN J. KLEN (hereinafter, Steve Klen or Steve) is a citizen of the United States, resident of the State of Colorado, and principal in Plaintiffs Diverse Construction Company and Holstein Self-Service Storage, LLC.

6. Plaintiff MARJORIE E. KLEN is the mother of Plaintiffs Steve Klen and Ed Klen and a

2

principal in Plaintiff Holstein Self-Serve Storage, LLC.

7.      Plaintiff DIVERSE CONSTRUCTION CORPORATION (hereinafter Diverse) is, and was at all times relevant, a Colorado Corporation, pursuant to C.R.S. § 7-101-101, *et seq.*, with a physical address of 6909 Shannon Court, Loveland, Colorado 80538, and Plaintiffs as its sole owners

8.      Plaintiff HOLSTEIN SELF-SERVICE STORAGE, LLC is, and was at all times relevant, a limited liability company organized under the laws of the State of Colorado and owner of certain of the property and structures involved in this lawsuit.

9.      Defendant CITY OF LOVELAND, COLORADO (hereinafter City or Loveland) is, and was at all times relevant, a governmental entity in the State of Colorado.

10.     Defendant THOMAS HAWKINSON is and was at all times relevant employed as The Building Official for Defendant Loveland, and is sued in his individual and his official capacities.

11.     Defendant GREGG GEORGE is, and was at all times relevant, employed as the Development Director for Defendant Loveland, and is sued in his individual and official capacities

12.     Defendant DON WILLIAMS is, and was at all times relevant, employed as the City Manager for Defendant Loveland, and is sued in his individual and official capacities

13.     Defendant KRISTINE BURNS is and was at all times relevant employed in various capacities with building permit issuance and administration by Defendant Loveland, and is sued in her individual and official capacities.

3

14. Defendant DAVID SPRAGUE is and was at all times relevant employed as the Plans Reviewer for Defendant Loveland, and is sued in his individual and his official capacities.

15. Defendant JEFF McKEE is and was at all times relevant employed as the Planning Technician for Defendant Loveland and is sued in his official capacities.

16. Defendant CINDY WORAYETH is and was at all times relevant employed in Defendant Loveland's Building Department and is sued in her official and individual capacities.

17. Defendant RICHARD HOSKINSON is and was at all times relevant, employed as a Building Inspector by Defendant Loveland and is sued in his official and his individual capacities.

18. Defendant JOHN R. DUVAL is and was at all times relevant, employed by Defendant Loveland as the City Attorney and is sued in his official and individual capacities.

19. Defendants JOHN DOE and JANE DOE are individuals who are known to exist and to be proper defendants in this action but whose current names and positions are unknown to Plaintiffs, and whose names are anticipated to be learned by Plaintiffs during the discovery process and added by amendment.

20. Due to the nature of the allegations against the individual Defendants herein, a copy of this Complaint and Jury Demand will be served upon the Attorney General for the State of Colorado.

## GENERAL ALLEGATIONS

21.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 - 20 of this Verified Complaint.

22.    Notice was given to all required defendants in a timely manner pursuant to C.R.S. § 24-10-109 on or about April 20, 2006 and was subsequently re-submitted as a Corrected Notice Pursuant to C.R.S. § 24-10-109, "to correct errors contained in the original Notice",  add GREG GEORGE as a Respondent, and itemize additional economic damages.

23.    Notice of Intent to Sue pursuant to C.R.S. § 24-10-109 was filed and served on Defendants on August 28, 2006, by the Plaintiffs.  The Notice was timely filed within 180 days of Plaintiffs first discovering the nature of their injuries, which occurred in or about May, 2006.

24.    The Plaintiffs are in the business of investing, developing, improving, and selling real estate in and around Loveland and have been engaged in that business for more than fifteen years, during which time they have worked closely and been directly involved with Loveland's Building Department and its processes.  Ed Klen served on the Construction Advisory Board for six years from 1999 to 2005.  The Plaintiffs are the owner/developer of a 69,000 square foot commercial project known as Anasazi Park in east Loveland (hereinafter,  Phase 1), begun in 2000 and completed in 2003.

25.     In or about January 2004, Plaintiffs began to plan the development of a commercial construction project for a 49,000 square foot industrial building to be known as Phase 2 and located adjacent to Phase 1, Anasazi Park in east Loveland.

26.     The Phase 2 project plans were for a "Core and Shell" building permit, because the Building

Department Officials directed Steve and Ed Klen to begin development with the Core and

Shell and once the shell was complete, obtain a Special Use Permit to accommodate tenants

who would be involved in a firearms shooting range and a martial arts studio. Thus, the

initial construction of Phase 2 was by permit for use by right requiring only that the Klens

comply with certain setbacks and other minor requirements, which were met by Plaintiffs'

engineers and timely filed with the City.   The Klens finished the research and groundwork

for the building permit and by March, 2004 had the first planning meeting with Loveland

Building Department to determine whether there were any requirements still unmet.

27.     During the past fifteen years it has been the custom and practice of many contractors and

builders working in the City to begin work on commercial or residential construction

projects before obtaining actual, final, building permits from the City, with the City's actual

knowledge, and without objection or any adverse action by the City.

28.     Even before the Plans were completed for Phase 2, Plaintiffs had two potential anchor

tenants and purchasers for space in Phase 2 and also had a contract in Phase 1 that was

contingent upon the completion of Phase 2.  The City knew this because the accommodation

of those tenants required a special use review which the City ordered.

29.     Because Phase 2 was similar to Phase 1 in size, construction materials, and planned uses, the

same firm which had performed successfully in Phase 1, Landmark Engineering was retained

in February 2004 to engineer and draft the plans for Phase 2.

30.     Relying on their long experience as developers in the City generally and on their experience

with Phase 1, specifically, the Klens accepted the City's assurances that it would take six to eight weeks from the date of their application to secure the Phase 2 building permit. Defendant Hawkinson, the building official, Rich Becker, an engineer for the City, and Sherry Albertson-Clark, then head planner for the City made those express assurances to the Klens.

31.   In August, 2005, Greg George stated publicly in print, in an article published in the Loveland Reporter Herald, that applications for building permits in the City were typically approved in six to seven weeks.  Sherry Albertson-Clark made a similar public statement during that same period.

32.   Plaintiffs submitted the Phase 2 plans and fees to secure the building permit  to the City's building department on or about July 6, 2004, but the City, without any legitimate reason, failed even to begin to process  the plans or the $300.00 fee for more than twelve weeks.

33.   When Plaintiffs submitted their plans for Phase 2 on or about July 6, 2004, in the reasonable expectation and reliance on assurances that the permit would issue no later than mid-September, 2004, and made continual, steadfast, and unrelenting efforts to obtain it, they did not receive the permit for nearly a year, until June 16, 2005

34.   In anticipation of the regular permit issuance process and express assurances by the City and its employees, the Klens took on a $2,100,000.00 loan for the Phase 2 project, with a construction start date in September 2004.  During the period after the application and fees were tendered, Steve Klen checked in with regularly with the building department in general and Jeff Sprague, in particular, who told Steve expressly that any issues regarding peripheral

structures could, and would, be addressed during the tenant finish phase of the construction process rather than at the core and shell phase, to expedite processing of the permit application.   Sprague noted this directive and representation on the plans and permit application.

35.     After mid-September, 2004, the Klens and the City knew there would be significantly increased material and labor costs, and increased weather problems and downtime which would adversely affect schedules and run the construction costs for Phase 2 up considerably and force them to turn down other opportunities.   The Klens were also faced with the potential loss of tenants and rents of at least $30,000 per month and made the City aware of their grave concerns over any holdup with the permits, against which they continued to receive assurances of an imminent permit.   The Klens were also concerned and troubled by the damage to their reputation for professionalism and timely performance that the delay of the permit was causing, and made the City aware of these concerns as well, as their reputation in their professional community is of tremendous importance to them.

36.     Relying on the Defendants' assurances that they had complied fully with the requirements and that the permit was shortly forthcoming, and the custom and standard practices in the local industry, the Klens began construction in December, 2004.

37.     Defendants issued a "Stop Work Order" on or about December 28, 2004, which it was delivered to the Klens on that date by Inspector Richard Hoskinson, who had been previously barred (and notice given to the City that he was so barred) from any and all of the Klens' job sites after he arrived intoxicated in his official capacity during the Phase 1

construction..  When Hoskinson presented the Stop Work Order, the Klens were in the process of pouring some 300 yards of concrete, which could not be returned to the plant, and had to be poured or dumped on the ground.  The Klens informed Hoskinson that they intended to finish the concrete work and would contact Thomas Hawkinson,  Hoskinson's boss, as soon as they were through with that job.  Hoskinson informed the Klens that he had the authority to send everyone home, but would not require that, and left the site.  It was, at that time, the custom and practice of the City to issue Stop Work Orders and immediately rescind them as soon as the individual on whom the Order was served contacted Hawkinson.

38.     When the concrete pour was completed, Steve called Hawkinson, who was out of the office for the day.  The first thing on December 29, 2004, Steve and Ed went to the Building Department to see Hawkinson.  During that meeting, Hawkinson abashedly stated that he knew the City was disgracefully behind on the permit process, that there would not be a problem, they would get it done, that the Klens did not need to worry about the stop work order, that everything would be worked out, and that they could and should just, "go ahead" with the construction.  This statement was not true when it was made and Hawkinson knew it was not true when he made it to the Klens.   The permit was not issued until more than six months after the December 29 meeting.

39.     In the past, when the City became back-logged in processing building permits, it would quickly out-source the review process in order to ensure timely processing of building permit applications, and it continues to do so today.  Indeed, for a project similar to Phase 2, simultaneous to, and across the street from Phase 2, the builders got the permits within six

weeks of their application.   David Sprague and Thomas Hawkinson both told Ed and Steve Klen expressly that doing the Core and Shell Permit as they directed would actually expedite the permit process and require less than normal time for processing.

40.   On or about March 21, 2005, the Klens, who had still not received the permit, met with Defendant City Manager Don Williams in an effort to resolve the problems caused by the City's inexcusable failure to issue the building permit,  and during this conversation, which became heated, Ed Klen questioned Willams's  competence,  the integrity and competence of the Building Department, and that of  Defendant City Attorney Duval.  Three days later, Duval maliciously canceled a required neighborhood meeting without justification or legitimate excuse in retaliation for Ed's statements to the Williams and initiated an angry and threatening public confrontation with Ed.  The neighborhood meeting was a mandatory part of the special use permit process for the Phase 2 tenant accommodations.

41.   On March 29, 2005, the City issued a citation to Ed Klen for alleged violations of the City′s Building Code Ordinances by building without a permit and violating a stop work order. The citation was withheld for months, without any justification, and was served on Ed Klen only later, when he was given to understand that it was for continuing to work after Hoskinson served him on December 28, 2004.

42.   On or about April 8, 2005, Ed and Steve Klen met with Defendants Duval and other individual Defendants and during the meeting one of the defendants held up and referenced, but did not serve, what they claimed was a citation that was issued in December, 2004, and wondered aloud about "what should be done with this ticket…"  The Klens asked what it

was and what it was for, but were not given an original or copy, told to whom the citation was issued or what the alleged offense was. Gregg George told the Klens that Hawkinson "could make it go away".

43. Upon information and belief, between March 29, 2005 and June 15, 2005, and unbeknownst to him at the time, Ed Klen was charged with approximately thirty counts of building without a permit and thirty counts of violating the Stop Work Order. These citations were deliberately not served on Ed, or was he ever made aware of the City's intent to issue them or actual issuance until many months later.

44. Upon information and belief, no other person or firm in the building construction industry had ever been issued such citations in the preceding five or more years, despite the customary practices of developers and builders in the area.

45. On May 2, 2005, John Duval told the Klens that if they obtained an Affidavit of Correction for a minor permit issue dealing with the lot line, that the building permit for Phase 2 would issue immediately. Steve Klen immediately issued the requested affidavit, rounded up thirteen signatures from individuals who attested to the lot line, and filed the package on May 9, 2005, notifying Duval at the same time. The building permit for Phase 2 did not issue.

46. The next day, May 10, 2005, Steve had a phone conversation with Greg George regarding, as usual, the permit delay. During the conversation, Steve told George that the City had treated the Klens "like shit," and George became angry. Seven days later, Hawkinson issued twenty-one secret citations to an unsuspecting Ed Klen for building without a permit.

47.     On or about June 13, 2005, Plaintiffs had yet another meeting with Hawkinson and others during which a frustrated and disgusted Steve Klen asked Hawkinson what kind of an idiot he was if you can't even run his own goddamned department.  Two days later, the City issued thirteen more secret citations against a still unsuspecting Ed Klen .  Shortly thereafter, the City also assessed a $7,117.80 penalty against the Klens, an unheard of penalty in the local construction industry.

48.     The  Defendants issued some sixty secret citations  deliberately failing to serve them as part of a plan to deny the Plaintiffs Due Process of Law, to violate their constitutional rights and to retaliate against them for the Klens' exercise of their rights to speak freely on matters of public importance, to criticize governmental officials, and  to petition their government for redress of their grievances.  By failing to timely issue and serve the citations against Ed Klen, the Defendants planned to and did deny him a reasonable opportunity to resolve the issues in contention  before matters escalated and placed him in further jeopardy, and kept him unaware that he needed to seek review of the Defendants' actions. The Defendants delayed and acted willfully, intentionally, maliciously, deliberately and without any legitimate legal justification or excuse for their conduct and damaged the Plaintiffs by so doing.

49.     As part of the plan to deprive Plaintiffs of their rights, Defendants also willfully and maliciously falsified and made forged entries on  Ed Klen's Application for Building Permits originally submitted on July 6, 2004; thus materially changing and causing a forged Application for Building Permit to be filed with Defendant City.  This forgery of an official

document was willfully, maliciously and deliberately designed to support the citations against and consequent unlawful and unconstitutional prosecution of Ed Klen.  The forgery was discovered by Plaintiffs within 180 days of the Notice of Intent to Sue dated May 3, 2006.

50.    As a routine business practice, the Klens kept a copy of the original July, 2004  Building Permit Application.  In February, 2006, they requested a copy of their application from the City and when they received the purported copy of their permit, the Klens noticed several discrepancies between the copy and original, not least of which was a forged signature of  Ed Klen.   When the Klens confronted building department employees, Defendant Burns admitted to  making one alternation to the original Building Permits,  identified Defendant Worayeth as the person who made other alternations, and stated that a third person (unnamed) had made the rest..  Other examples of forged entries and unauthorized alterations were itemized in Plaintiffs' Notice of Intent to Sue.   Defendants Burns,  Worayeth, and John/Jane Doe deliberately, maliciously, conspiratorially, willfully and wantonly forged entries in order to harm the Plaintiffs and expedite a planned prosecution of Ed Klen, and the Defendants acted without legal justification or excuse.

51.    No Plaintiff other than Ed Klen was directly accused or charged with alleged violations of City Ordinances; Ed Klen alone was charged and prosecuted, on the basis of his forged name and signature on the permit application, which all Defendants knew or should have known was not the original application for permit and was, in fact, a forgery.

52.    On or about May 11, 2006, an illegal, sunrise, clandestine search and inspection of Phase 2

was made by Defendant Hoskinson, who trespassed on the Plaintiffs' property.  Hoskinson, barred from Plaintiffs' job sites, did not make anyone aware of his presence or his intentions as required by law and was caught far inside the building after he sneaked onto the Phase 2 property.  Plaintiffs were not notified of any inspection, nor did they give permission for any inspector to enter the property.   When the Klens caught and confronted Hoskinson, he claimed that he was "bored and just killing time" and stated categorically that no one from City had sent or instructed him to trespass or search.  When he made this statement, Defendant Hoskinson lied, knew he lied and lied willfully and wantonly as part of the Defendants'  scheme to trespass and violate Plaintiffs' Fourth Amendment rights and to cover-up the violations and acts of the conspirators .

53.     After discovering the search and trespass, the Klens attempted to contact Hawkinson to find out what was going on, but were unable to reach him and left a voice mail message. Hoskinson then made a second statement to the Klens, in which he again intentionally lied about the reasons for his trespass on Phase 2 property.

54.     On the next morning, May 12, 2006, the Klens went to the City to inquire about the trespass and confronted Greg George, who admitted that he and other Defendant city officials had sent Defendant Hoskinson to conduct a search and inspection without Plaintiffs ' knowledge or permission.   George also lied to the Klens, stating that he had "every right" under the Loveland Municipal Code and Uniform Building Code to make or direct a subordinate to conduct a search and entry of their property without their knowledge or permission.  These false statements of and concerning the illegal search and trespass were deliberately made in

14

order to cover up the unlawful conduct and in an attempt to trick the Klens into believing the conduct was lawful.  The  false statements were made to cover up the illegal search and trespass which violated the  Plaintiffs'  Fourth and Fourteenth Amendment rights, which were done in retaliation for their exercise of their First Amendment rights and their demands for Due Process of Law.

55.     The Klens reported the search and trespass to the Loveland City Police Department and after an investigation, a police officer informed the Klens that the Defendants assured the police that the search and trespass were  allowed by and proper under the 2003 International Building Code (as incorporated into the Loveland Municipal Code); which assertion was false and contrary to that Code generally and Section 104.6, Right of Entry, specifically, and a violation of the Loveland Municipal Code, Section 1.08.010.  Defendants ' conspired to and did make false statements to the police in order to cover up their illegal search and trespass, violated Plaintiffs' rights to Due Process of Law, and directly damaged Plaintiffs as a result.

56.      Plaintiffs' itemized their claims arising from the search/trespass/coverup conspiracy as well as other claims under the United States Constitution and the Constitution of the State of Colorado arising from Defendants ' interactions with Plaintiffs in their administration of the construction of Phase 2  in the August 28, 2006, Notice of Intent to Sue.

57.     Between June 28, 2006 and the date of the filing of this complaint, Defendants have interfered with and unlawfully denied Plaintiffs' statutory right and entitlement to a hearing and an opportunity to submit their claims of official malfeasance and misfeasance to the City

Construction Advisory Board, without legal justification or excuse and in furtherance of Defendants' conspiracies to violate Plaintiffs' constitutionally-protected rights and to cover up their unlawful misconduct.

58.    Defendants have further interfered with and unlawfully denied Plaintiffs' rights by maliciously and willfully denying them Due Process of Law by prosecuting Ed Klen for the alleged violations of the building code/city ordinances and the so-called stop work order of December, 2004, using false and fabricated evidence, and in retaliation for the Plaintiffs' exercise of their constitutional rights, in violation of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

59.    Although actions of the individual Defendants as set forth in the Complaint and Jury Demand were malicious, intentional, willful, and wanton, Plaintiffs do not seek exemplary or punitive damages from any Defendant in any capacity.

60.    As a direct result of the Defendants' actions as set forth herein, the Plaintiffs have suffered, still suffer, and will continue to suffer, pecuniary, economic damages including, but not limited to loan penalties, lost income, and tenant concessions.  In addition and as a direct consequence of Defendants' wrongful actions, the Plaintiffs have suffered, still suffer, and will continue to suffer noneconomic damages including, without limit, damages to their reputation, mental and emotional distress, humiliation, and pain and suffering.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHT TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE AGAINST ALL DEFENDANTS BUT WORAYETH, BURNS, AND DOE(S)

61.     Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 - 60 of this Verified Complaint and Jury Demand.

62.     City officials and employees, acting under color of law, conspired to execute an illegal search of and trespass onto Plaintiff's property in violation of their right to be free from unreasonable search and seizure.

63.     Defendant City failed to exercise due care by adequately training, supervising, disciplining, or properly hiring officials and employees.  Not only was the training inadequate, the City was so reckless or grossly negligent that the employees' and officials' misconduct and misfeasance was inevitable; and this failure to train was the result of and amounted to deliberate indifference to the rights of persons with whom the City officials come into contact, generally, and of Plaintiffs, specifically.

64.     Defendant City's failure to adequately train, supervise, discipline, or properly hire officials and employees was reckless, intentional, done with deliberate indifference, or with gross negligence and resulted directly and proximately in the violation of Plaintiffs' constitutional rights.

65.     The Defendant City's failures were the result of its policies, customs, practices, or procedures.

66.     The City ratified the acts of its employees and officials.

17

67. As a direct and proximate result of Defendant City's violation of 42 U.S.C. § 1983 and Plaintiffs' constitutional rights, the Plaintiffs have suffered, still suffer and will continue to suffer damages, including extreme emotional distress, physical and mental pain and suffering, severe mental anguish, psychological damage, humiliation, loss of enjoyment of life, and other non-pecuniary damages.  All Plaintiffs have suffered, still suffer, and will continue to suffer pecuniary losses, including but not limited to last wages, lost benefits, lost profits, lost rents, attorney's fees, loss of reputation and goodwill, diminished opportunities and medical expenses.

### SECOND CLAIM FOR RELIEF

**42 U.S.C. § 1983 - VIOLATION OF PLAINTIFFS' FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAWS - AGAINST ALL DEFENDANTS**

68. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 - 67 of this Verified Complaint and Jury Demand.

69. City officials and employees, acting under color of law, conspired to fabricate evidence against Ed Klen in order to effectuate and expedite a prosecution, in violation of his right to Due Process of Law.

70. City officials and employees conspired to withhold a building permit from Plaintiffs, without just cause or legal justification for doing so, to which permit Plaintiffs had a right and which permit was a protected interest violating Plaintiffs' Due Process rights to be treated with fundamental fairness by the government, as mandated by the Fifth and Fourteenth

Amendments.

71.     City officials and employees conspired to single out Plaintiffs for fines and prosecution, and to ignore the identical conduct of all other similarly situated developers and builders, including officials on the Construction Advisory Board, in violation of Plaintiffs' right to the Equal Protection of the Laws, and in retaliation for their exercise of their First Amendment rights to Free Speech and Petition for Redress.

72.     The Defendants' conduct was a result of the City's failure to exercise due care in hiring, training, supervision,  from the City's customs, policies,  practices, and procedures, ratification of individual defendants' wrongful conduct and actions, and willful, wanton, and reckless disregard for the rights of persons who would be affected.

73.     As a direct and proximate result of Defendant City's violation of 42 U.S.C. § 1983 and Plaintiffs' constitutional rights, the Plaintiffs have suffered, still suffer and will continue to suffer all such damages as set forth previously herein.

### THIRD CLAIM FOR RELIEF

**42 U.S.C. § 1983 - VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS - AGAINST ALL DEFENDANTS**

74.     Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 - 73 of this Verified Complaint and Jury Demand.

75.     Defendants acted under color of law against Plaintiffs to violate their rights, withhold their permits, and cause them grave harm in direct retaliation for the Plaintiffs' ideas and

statements about the competency and integrity of public officials in the exercise of their governmental authority.

76.     Defendant City failed to adequately train, supervise, discipline, or properly hire officials and employees and was so reckless or grossly negligent that future misconduct was inevitable; and this failure to train or supervise amounted to deliberate indifference to the rights of persons with whom the its officials come into contact, generally, and Plaintiffs, specifically.

77.     Defendant City ' s failure to adequately train, supervise, discipline, or properly hire officials was  reckless, intentional, done with deliberate indifference, or with gross negligence and resulted directly and proximately in the deprivation and violation of Plaintiffs' constitutional rights.

78.     The Defendant City's failures were a result of its policies, customs, practices, or procedures.

79.     The City ratified the acts of its employees and officials.

80.     As a direct and proximate result of Defendant City's violation of 42 U.S.C. § 1983 and Plaintiffs' constitutional rights,  the Plaintiffs have suffered, still suffer and will continue to suffer damages, including all those set forth previously herein.

**FOURTH CLAIM FOR RELIEF**

**CIVIL CONSPIRACY TO FORGE A BUILDING PERMIT APPLICATION -
AGAINST DEFENDANTS BURNS, WORAYETH, AND JOHN/JANE DOE(S)**

81.     Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs

        1 - 80 of this Verified Complaint and Jury Demand.

81.     Defendants Burns, Worayeth, and John/Jane Doe(s) willfully, intentionally, and maliciously

        made alterations to Plaintiffs' Building Permit Application on or about July 6, 2004 and thus

        forged a new false permit designed to deprive Plaintiffs of their rights, legal entitlements,

        and property interests and to expedite the prosecution Ed Klen.

82.     Defendants John Doe and Jane Doe, whose names are currently unknown to Plaintiffs,

        instructed Burns and Worayeth to conduct the forgery of the building permit and participated

        in the actual forgery thereof.  Upon Plaintiffs ' learning of their identity, Plaintiffs will seek

        leave to amend this Complaint to add their names as party Defendants.

83.     Defendants Burns and Worayeth, jointly and in agreement with John Doe and Jane Doe,

        agreed by words and conduct to forge the Plaintiffs' Building Permit of July 2004 in order to

        deny Plaintiff ' s rights and entitlements under the law, to cause a wrongful prosecution to

        ensue against  Ed Klen, to harm the reputation and business of Plaintiffs and their status in

        the community, and to retaliate against them for their criticism of City officials and

        employees.

84.     Defendants Burns and Worayeth, jointly or in agreement with John Doe and Jane Doe both

        agreed by words and conduct to forge and alter the Plaintiffs' Building Permit of July 2004,

and engaged in conduct and unlawful overt acts of forgery in furtherance of their goal which included, without limit, the  prosecution of Ed Klen by false evidence, the assessment of fines against Plaintiffs, the retaliation for the statements made by Ed and Steve Klen to officials of the Defendant City in an effort to redress their grievances and the City's incompetent or malicious failures, and the humiliation of and harm to Plaintiffs.

85.    As a direct and proximate result of the above Defendants' conspiracy, Plaintiffs suffered, still suffer, and will continued to suffer economic damages, including but not limited to lost income, lost business and contractual benefits, lost profits, attorney's fees and other economic and pecuniary damages.  Individual Plaintiffs have suffered, still suffer, and will continue to suffer damages, including extreme emotional distress, physical and mental pain and suffering, severe mental anguish, psychological damage, humiliation, damage to reputation, public disgrace, loss of enjoyment of life, and other non-pecuniary damages.

## FIFTH CLAIM FOR RELIEF

### Civil Conspiracy to Trespass Onto and Cover up the Trespass Onto Plaintiffs' Property - Against all Defendants Except Burns and Worayeth

86.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 - 85 of this Verified Complaint and Jury Demand.

87.    Defendants Hoskinson, Hawkinson, George, the City and Duval  entered into an agreement by words or conduct to trespass on Plaintiff's Phase 2 property on or about May 11, 2006, and then continued their unlawful conspiracy by attempting to cover up their illegal actions

by lying about their trespass and the legality of their actions.

88.    These Defendants also entered into an agreement by words or conduct to willfully, wantonly, intentionally, and maliciously deprive Plaintiffs of their rights to seek relief from the Defendants' oppressive and unlawful conduct by unlawfully denying them the right to appear with their complaints and grievances before and be heard by the Construction Advisory Board of Defendant City.

89.    These Defendants jointly with one another and in agreement with each other not only agreed by words and conduct to trespass on Plaintiffs' Phase 2 property, but engaged in such conduct and unlawful overt acts of trespass and then lied about that trespass in furtherance of their goal which included, without limit: bringing and prosecuting further criminal charges against Plaintiff Ed Klen, causing Plaintiffs' to be fined for building code violations, retaliating against Plaintiffs for the statements made by Plaintiffs Ed and Steve Klen to officials of the Defendant City in an effort to redress their grievances and resolve the incompetent or malicious performance of those officials and employees, and to humiliate and cause damage Plaintiffs economic, reputational, and noneconomic harm.

90.    Defendants' conduct was the direct and proximate cause of harm and damages to Plaintiffs, as previously set forth herein, for which damages Defendants are jointly and severally liable.

## SIXTH CLAIM FOR RELIEF

### TRESPASS – AGAINST DEFENDANTS HAWKINSON, GEORGE, DUVAL, HOSKINSON, AND THE CITY

91.     Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1-90 of this Verified Complaint and Jury Demand.

92.     Defendant Hoskinson willfully, intentionally, and unlawfully trespassed on Plaintiffs' Phase 2 property on May 11, 2006, in agreement with and at the express direction and agency of Defendants Hawkinson, George, the City and Duval who were acting willfully, wantonly, maliciously and intentionally to violate Plaintiffs' rights under the law and to cause Plaintiffs harm. .

93.     These Defendants unlawfully trespassed on Plaintiffs' Phase 2 property  in an attempt to cause a wrongful conviction to enter against Ed Klen, and to retaliate against and destroy Plaintiffs' reputation,  business, and standing in the community.

94.     As a direct and proximate result of the above Defendants' trespass, Plaintiffs  suffered, still suffer, and will continue to suffer damages, including extreme emotional distress, physical and mental pain and suffering, severe mental anguish, psychological damage, humiliation, damage to reputation, public disgrace, loss of enjoyment of life, and other economic and noneconomic damages.

## SEVENTH CLAIM FOR RELIEF

### OUTRAGEOUS CONDUCT - AGAINST ALL DEFENDANTS

95.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 - 94 of this Verified Complaint and Jury Demand.

96.   All Defendants engaged in extreme and outrageous conduct by each of the actions described in this Verified Complaint generally and as set forth in Paragraphs 1 - 94 specifically and these Defendants acted willfully, wantonly, with grossly negligence, recklessly or intentionally and with the express intent of causing Plaintiffs to suffer severe emotional distress and resultant emotional and physical damages.

97.   Defendants' actions caused Plaintiffs Ed Klen, Steve Klen, and Marjorie Klen severe emotional distress and the resultant emotional and physical damages.

98.   As a direct and proximate result of the Defendants' outrageous conduct and/ or intentional infliction of emotional distress, Plaintiffs have suffered, still suffer, and will continue to suffer economic damages, including but not limited to lost income, lost business and contractual benefits, lost profits, attorney's fees and other economic and pecuniary damages. These individual Plaintiffs suffered still suffer, and will continue to suffer damages, including extreme emotional distress, physical and mental pain and suffering, severe mental anguish, psychological damage, humiliation, damage to reputation, public disgrace, loss of enjoyment of life, and other non-pecuniary damages.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs pray that this Honorable Court enter judgment in their favor and against the Defendants on each and every claim, award them all such damages as required to make them whole against Defendant's wrongful actions, in excess of $100,000.00, attorneys fees and costs, and all such other relief, including injunctive, as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims presented herein.

**Respectfully Submitted this 16th day of February, 2007**

/s/ *John Kenneth Pineau*
LAW OFFICES OF JOHN KENNETH PINEAU, P.C.
Grill Mansion, 2305 Broadway
Boulder, Colorado 80304
303-440-4444
Fax: 303-449-2198
johnpineau@yahoo.com


/s/ *Ingrid J. DeFranco*
LAW OFFICES OF INGRID J. DEFRANCO
368 S. McCaslin Blvd. #203
Louisville, CO 80027
303-443-1749
Fax: 720-890-5921
defrancoi@comcast.net

ATTORNEYS FOR PLAINTIFFS

# VERIFICATION

STATE OF COLORADO                )
                                 ) ss.
CITY AND COUNTY OF DENVER        )


     I. Stephen J. Klen, having first been duly sworn, hereby state that all facts contained in this Verified Complaint and Jury Demand are true and correct to the best of my knowledge, information, and belief.


/s ***Stephen J. Klen***
Stephen J. Klen


     Subscribed and sworn to before me this 14th day of February, 2007, by Stephen J. Klen.

Witness my hand and official seal


*s/ **Kelsey L. Weber***
Notary Public

[ SEALED ]

My commission expires:  8-11-2009


*Original signed verification retained at the offices of counsel*


27

# VERIFICATION

STATE OF COLORADO          )
                                         ) ss.
CITY AND COUNTY OF DENVER      )

      I. Edward J. Klen, having first been duly sworn, hereby state that all facts contained in this Verified Complaint and Jury Demand are true and correct to the best of my knowledge, information, and belief.

                                        /s ***Edward J. Klen***
                                         Edward J. Klen

      Subscribed and sworn to before me this 14th day of February, 2007, by Edward J. Klen.

Witness my hand and official seal

                                      ***s/ Kelsey L. Weber***
                                         Notary Public

[ SEALED ]

My commission expires:  8-11-2009

*Original signed verification retained at the offices of counsel*

28