**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 07-cv-00347-MSK

**EDWARD J. KLEN;
STEPHEN J. KLEN;
DIVERSE CONSTRUCTION, INC., a Colorado corporation; and
HOLSTEIN SELF-SERVICE STORAGE, LLC, organized under Colorado law,**

        Plaintiffs,

v.

**THE CITY OF LOVELAND, COLORADO, a Colorado Municipal Corporation;
THOMAS HAWKINSON, City of Loveland Building Official, in his individual and official capacities;
GREG GEORGE, City of Loveland, Community Services Director, in his individual and official capacities;
JOHN R. DUVAL, City of Loveland Attorney, in his individual and official capacities; and
DAVID SPRAGUE, City of Loveland Plans Reviewer, in his individual and official capacities;**

        Defendants.

---

**OPINION AND ORDER DENYING SUPPLEMENTAL MOTION FOR PARTIAL
SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendants' Supplemental Motion for Partial Summary Judgment on First Amendment Retaliation Claim **(#158)** and the Plaintiffs' Brief in Support of Presenting All Remaining Claims to the Factfinder (**#157**).

This case[1] went to the Tenth Circuit on a Summary Judgment ruling issued by another

---

[1]The Plaintiffs' Complaint alleged numerous constitutional violations with regard to their efforts to obtain a building permit, including deliberate delay, unreasonable requirements, solicitation of illegal and extortionate fees, selective prosecution against the Plaintiffs for building without a permit; use of perjured statements in criminal ordinance violation proceedings, retaliation for the Plaintiffs' exercise of their First Amendment rights, forgery of the Plaintiffs' permit application to facilitate a wrongful prosecution, and trespass by a building

judge.[2] The Tenth Circuit affirmed the summary judgment decision in part, reversed it in part, and remanded to this court for further proceedings.[3] The case was then reassigned to the undersigned. Because the Tenth Circuit's decision did not address all of the issues raised in the original motions, the parties were given the opportunity to provide additional briefing as to those issues. Thus the Defendants' Motion supplements their prior Motions for Summary Judgment (## **97, 98, 99, 100, 101 & 102**).

Having considered the Defendants' Motion, Plaintiffs' Brief, the briefs filed in connection with the original Motions for Summary Judgment, and the *Klen* decision, the Court **FINDS** and **CONCLUDES** the following.

### I.  Issue Presented

According to a submission from the parties (#**145**), the following claims are outstanding following remand:

1. First Amendment Retaliation (presented as the fifth claim for relief) by Plaintiffs Holstein Self-Service Storage, LLC, Diverse Construction, Inc., Edward Klen, and Stephen Klen against Defendants City of Loveland, Community Services Director Greg George, Building Official Thomas Hawkinson, City Attorney John Duval, and Plan Reviewer David Sprague.

2. Violation of Due Process (conviction based on false evidence) (presented as the

inspector.

---

[2] The case was initially assigned to Senior Judge Richard P. Matsch who granted the Defendants summary judgment in favor of the Defendants on all the federal claims and declined to exercise jurisdiction over the state law claims.

[3] *Klen v. City of Loveland*, 661 F.3d 498 (10th Cir. 2011).

2

>
> fourth claim for relief), by Plaintiff Edward Klen against Defendant City of Loveland.

3. Violation of Fourth Amendment (illegal search) (presented as the sixth claim for relief), by Plaintiffs Edward Klen and Stephen Klen against Defendant City of Loveland only.

The Defendants' Supplemental Motion seeks summary judgment in favor of the individual Defendants on the First Amendment retaliation claim. The Defendants argue that the Plaintiffs' evidence is insufficient as a matter of law to establish the elements of the claim as to each individual Defendant. The Plaintiffs disagree, and contend that there is at least an issue of fact in this regard.

## II.  Material Facts

For the purposes of resolving the summary judgment issue the material facts are construed in the light most favorable to the Plaintiffs, the non-moving parties. The background of the dispute is concisely explained in the Tenth Circuit's opinion in *Klen*, 661 F.3d at 501-503:

> Plaintiffs Ed Klen and Stephen J. Klen are partners in plaintiff Holstein Self–Service, LLC (Holstein). They are also shareholders in plaintiff Diverse Construction, Inc. (Diverse). Holstein owns land in Loveland known as Anasazi Park, which it contracted with Diverse to develop.
>
> In 2003, plaintiffs completed construction of a commercial project in Anasazi Park known as "Phase 1." Early in 2004, they began the process of obtaining City approval for a new commercial project in Anasazi Park, known as "Phase 2." Plaintiffs had two potential anchor tenants lined up for Phase 2: a martial arts studio (the "Oriental School of Mudu"), and a shooting range.
>
> Contractors who construct buildings within the City must obtain approval for their structures. The City approves various phases of industrial construction in incremental stages by granting permits,

> inspecting work performed pursuant to these permits, and granting final approval based on successful inspection results. The City makes available several different types of building permits with differing requirements and different time frames for issuance. "Footing and foundation" permits allow a builder to pour the concrete foundation and footings for a building. "Core and shell" permits allow the builder to construct the core and shell of the structure. "Tenant finish" permits allow completion of the building so that it may be occupied by tenants. Finally, "special use" permits are used where the builder intends to use a building for a purpose not permitted by existing zoning.
>
> Anasazi 2 was not zoned for a martial arts studio or a firing range. Accordingly, when plaintiffs submitted their building permit application on July 6, 2004, they filed for both a tenant finish permit (allowing them to complete the structure from start to finish) and a special use permit. According to plaintiffs, defendant Thomas Hawkinson, the City's permit coordinator, suggested to them that things might move faster if they withdrew their application for a tenant finish and special use permit, and simply filed instead for a core and shell permit to get started on the building. This was because, under the City's municipal ordinances, plaintiffs could obtain a core and shell permit by right, whereas the City had discretion concerning whether to issue a special use permit and would impose strict requirements before issuing such a permit. Hawkinson's seemingly reasonable suggestion would lead to no end of trouble as things progressed.
>
> Even now, there is considerable factual disagreement between the parties about the nature of the permit plaintiffs actually sought and the delays they endured in obtaining it. . . . . [W]e will assume for purposes of summary judgment analysis that it was the core and shell permit that was delayed.

The Plaintiffs contend they suffered unreasonable delays, and that when they complained, Defendants George, Hawkinson, Duval and Sprague retaliated by creating further delays, unreasonably withholding approval of permit elements, issuing stop work orders and citations, illegally inspecting the property, and other adverse actions.

Based on assurances from City officials that the core and shell permit would issue within

4

six to eight weeks, the Plaintiffs applied for and obtained a construction loan, anticipating that construction would begin around September 2004. On August 12, 2004, they resubmitted to the City their plans for a core and shell permit and began preliminary site preparation.

However, the aforementioned delays soon began. On September 14, 2004, David Sprague, a plan reviewer for the City, told the Klens he would not approve the Plaintiffs' permit application unless they submitted mechanical, plumbing, and electrical drawings. Plaintiffs disagreed that such drawings were needed because they concerned tenant finishes, which were not part of the core and shell permit. According to the Plaintiffs, sometime in September 2004, perhaps in that same interaction, Ed Klen confronted Sprague, accusing him of not even looking at the permit application, since it was clearly marked as a core and shell permit. He asked Sprague why he was lying and also demanded to know "what the hell was going on" in the building department. #**45**, at ¶ 56. In October 2004, Stephen Klen again confronted Mr. Sprague and complained of Mr. Sprague's treatment; both Klens also apparently questioned the competence of both Sprague and Hawkinson, asking, "when the hell are you going to get your shit together in this department?" #**45**, at ¶ 62.

The Plaintiffs closed on their construction loan in November, 2004. Around the same time, they had several meetings with Mr. Hawkinson in an effort to determine when they could expect the permit. Plaintiffs contend on December 1, 2004, Mr. Hawkinson told them that they could proceed with some foundation work even without a permit; there is evidence that the City routinely permitted builders to do some work before permits were issued.

Nonetheless, on December 28, 2004, despite his prior verbal approval for work to commence, Mr. Hawkinson issued a stop work order (SWO). The next day, the Plaintiffs met

with Mr. Hawkinson and Mr. Sprague about their permit and the SWO. This meeting was again confrontational. The Plaintiffs discovered that Mr. Sprague had been reviewing the original tenant finish plans submitted in July 2004, and claimed never to have received the core and shell plans the Plaintiffs had submitted in August 2004. The Klens contend that as a result of this meeting Mr. Hawkinson told the Klens that they could continue working despite the SWO.

There continued to be issues delaying the project. Around the same time, in December 2004, a surveyor informed the Klens that "a 'ghost line' which had been added to the [Anasazi] Phase I plat at the City's request had somehow been transformed by Larimer County into a property line." *Klen*, 661 F.3d at 504. The Plaintiffs assert that the City customarily allowed contractors to resolve such issues a memorandum of understanding, whereby a temporary permit would be issued while the plat was corrected. The City initially agreed to using this approach. However, around March 18, 2005, City Attorney John Duval informed the Klens' attorney that he was rejecting the memorandum of understanding regarding the plat "ghost line" problem.[4]

On March 25, 2005, the Klens met with City manager Don Williams to complain about Mr. Duval and Mr. Hawkinson; during this meeting, Ed Klen called Mr. Duval a "boob" and said Mr. Hawkinson "was acting like an 'asshole' in running his department." **#45**, at ¶ 86. According to the Plaintiffs, Williams terminated the meeting, warning them "you're big boys and you know what you are getting into." When they later met with Mr. Hawkinson, he stated "so I'm an asshole, huh? We'll see about that." **#45**, at ¶ 88. In addition, two days after the meeting with City manager Williamson, Mr. Duval cancelled without explanation a mandatory

---

[4] Mr. Duval later informed the Klens that the plat issue could only be resolved by obtaining affidavits of correction from all the affected landowners. The Plaintiffs complied with this requirement around May 9, 2005.

neighborhood meeting required for their special review permit.

On March 29, 2005, the Klens went to the Building Division and reviewed a printout of a log showing progress notes on the project; they discovered that their plans had not been reviewed since September 14, 2004. The Klens apparently loudly expressed their "disgust" for how the division was managed. They were immediately called into Mr. Hawkinson's office; Mr. Hawkinson there handed Ed Klen a citation for continuing work in violation of an SWO.

In April 2005, Mr. Sprague, the plan reviewer, sent the Plaintiffs a letter stating that he had the resubmitted plans but that the Klens had to submit new elevation architectural drawings. When the Plaintiffs protested that they had already submitted identical elevations with their original plans, Mr. Sprague told them he needed the documents stamped by their engineering firm. The Plaintiffs contend this was an unnecessary requirement but nonetheless complied with it. In addition, in May 2005, an official with the City Water Department told the Klens that they would have to resubmit the water taps on their plans to show two three-quarter inch, rather than one, one-inch, tap. The Plaintiffs also contend that this was a completely unnecessary requirement but that they complied with it, delivering the new plans on May 23, 2005 and then again on June 3, 2005 after the Water Department claimed not to have received them.

On May 17, 2005, the Klens examined another log printout pertaining to their project and came to the conclusion that the log had been tampered with. They became loudly irate, and were called into Mr. Hawkinson's office, where Mr. Hawkinson attempted to serve twenty-one citations on Ed Klen, including tickets for working without a permit.

Another delay resulted from the issue of capital expansion fees (CEFs). The Klens were told that these fees needed to be paid before they could receive the permit. They disputed this,

asserting that under the applicable municipal ordinance CEFs were not due until final inspection for a certificate of occupancy, which would not be issued until the tenant finish was complete. The Plaintiffs paid the fees under protest, which were much higher than originally quoted. On June 13, 2005, during a dispute about the CEFs, Steve Klen asked Mr. Hawkinson, "what kind of idiot are you, if you can't even run your own goddamned department?" **#45**, at ¶ 135. Two days later, during a meeting with Mr. Duval, Mr. Duval told them they had "made a, 'slap in the face of authority,' " for which they must pay." **#107-3**, at ¶ 41.

On June 16, 2005, the core and shell permit finally issued. By that time, the City had issued a total of nearly sixty citations to Ed Klen for working without a permit or in violation of the SWO, discussed above.[5] The Plaintiffs contend these citations were issued in retaliation for their protected speech expressing anger and frustration at the permitting process.

On May 3, 2006, the Plaintiffs served the Defendants with their notice of intent to sue. Eight days later, a City building inspector, Richard Hoskinson, entered the premises of Anasazi Phase 2 without a warrant or consent from the Plaintiffs. The Plaintiffs contend that Mr. George, the Community Services Director and Mr. Hawkinson's supervisor, later told them that Mr. George, Mr. Duval and Mr. Hawkinson had sent Hoskinson to conduct the inspection. The Plaintiffs and the City disputed whether the building code permitted an unannounced inspection. The Plaintiffs attempted to get an interpretative ruling on the issue from the construction advisory board and thereafter to petition City Council regarding whether City building inspectors

---

[5]The citations were ultimately resolved in Loveland Municipal Court pursuant to a plea agreement but not without further issues, including Mr. Duval allegedly submitting a false affidavit executed by Mr. Hawkinson and Mr. Duval and the Klens getting into a verbal altercation about the plat issue.

could enter the premises without notice or permission. The Plaintiffs contend that Mr. Duval prevented them from having the construction advisory board hear the issue, although it is not clear how he effected this.

Plaintiffs claim that the City continued its retaliatory actions against them for years after the permit issued. They assert that Mr. Hawkinson improperly denied them a certificate of occupancy for the property in 2008; in addition, in June 2009, when the lessee of the firing range gave up the lease and the Klens took over the operation, City manager Williams ordered Loveland police officers to stop using the range in order to deny the Klens the City's business.

### III. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV.   Analysis

### A.   First Amendment Retaliation - Elements

To establish a claim of retaliation in violation of the exercise of First Amendment rights under § 1983, a plaintiff must plead and prove (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's action was substantially motivated as a response to the plaintiff's exercise of his First Amendment speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).

The second element is evaluated under an objective standard; therefore, the Plaintiffs need not demonstrate that they were actually deterred from engaging in constitutionally protected activity. *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001). An action that is otherwise permissible or authorized may nonetheless support a claim for retaliation if it is taken in order to retaliate and suppress speech. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

The establish third element, substantial motivation, a plaintiff must come forward with

some evidence linking the defendant's action to the plaintiff's speech; a defendant's knowledge of the protected speech, together with close temporal proximity between the speech and challenged action, may be sufficient. *Maestas v. Segura*, 416 F.3d 1182, 1188-89 (10th Cir. 2005) (examining "substantial motivation" for the purposes of a public employee's retaliation claim). However, mere speculation and "hunches" are inadequate. *Id*.

As noted above, the Tenth Circuit in *Klen* determined that the Plaintiffs' complaints and criticisms[6] could amount to constitutionally protected speech sufficient to establish the first element of the claim. However, the Defendants contend that the Plaintiffs' evidence is insufficient to make a *prima facie* showing of the second (action that would chill a person of ordinary firmness from engaging in protected speech) and third (retaliation as substantial motivation for taking the action) elements of the claim with respect to each individual Defendant.

**B.     Application**

    **1.     Defendant Duval**

        **a.  Injury that would chill a person of ordinary firmness**

As noted above, Mr. Duval is the City Attorney for the City of Loveland. It is not entirely clear what the Plaintiffs rely upon for the second element of the claim against Mr. Duval (adverse action taken in retaliation for engaging in protected speech). It appears there are several possibilities: (1) Mr. Duval cancelling the community meeting two days after Edward Klen told City Manager Williams that Mr. Duval was a "boob"; (2) requiring the Plaintiffs to

---

[6]The Court will assume without deciding that all instances of speech by the Klens was made in their personal capacity as well as in their representative capacity for the two entity Plaintiffs.

obtain affidavits from property owners before authorizing the permit instead of allowing Plaintiffs to continue working while resolving the plat issue; (3) prosecuting Edward Klen for working without a permit; (4) sending a City inspector to inspect the building site without permission or notice; or (5) preventing the Klens from raising their dispute regarding the May 2006 inspection with the construction advisory board or City Council.

With respect to the first of these possibilities, there is no evidence demonstrating any injury that resulted from Mr. Duval's cancellation of the community meeting. The Plaintiffs say that the meeting was "mandatory," but there is no evidence that shows a particular adverse effect on the processing of Plaintiffs' permit or other aspects of the project due to its cancellation. Given the absence of any indication of hardship, inconvenience, or burden, this action does not amount to an injury that would chill a person of ordinary firmness from continuing to exercising his or her First Amendment rights.

The second action was Mr. Duval's rejection of the memorandum of understanding and requirement that Plaintiffs obtain affidavits from property owners to correct the plat before allowing the permit to issue. Given that this could have extended the delay in the issuance of the permit, and the delay had economic consequences for the Plaintiffs, a reasonable jury could find that such an action resulted in an injury to the Plaintiffs that would chill a person of ordinary firmness from criticizing City officials for the problems associated with the issuance of the permit.

The third action was Mr. Duval's prosecution of Ed Klen for working without a permit and/or violating the stop work order. However, Judge Matsch concluded and the Tenth Circuit affirmed, under the doctrine of prosecutorial immunity, Mr. Duval cannot be individually liable

for any claim arising from his prosecution of Ed Klen in a judicial proceeding. *Klen*, 661 F.3d at 515. Therefore, this action cannot support a retaliation claim against Mr. Duval.

The next action was Duval's decision to send an inspector to the Klen's property. This, the Klens contend resulted in trespass on their property, an abstract and technical injury. The evidence that Mr. Duval was involved in this decision is not strong, but giving the Klens the benefit of all favorable inferences, his participation in the decisionmaking resulted in an injury that could chill a person of ordinary firmness from continuing to complain about the Defendants' conduct and to initiate legal proceedings.

Finally, the Plaintiffs assert that Mr. Duval prevented them from obtaining an decision from the construction advisory board about whether the building code authorized an unannounced inspection. There are several problems with this assertion. First, there is no evidence that Mr. Duval was responsible for the board's refusal to hear the issue; the evidence only shows that Mr. Duval's assistant informed the Plaintiffs that the board would not hear the issue, not that Mr. Duval had any role in such decision. In addition, there is no evidence of any particular injury that resulted from the board's decision. Thus, the evidence is insufficient to show that Mr. Duval caused an injury that would chill a person of ordinary firmness from continuing to engage in protected First Amendment activity.

### b. Evidence that retaliation was substantial motivation in taking the action

Focusing on actions by Mr. Duval that could have caused injury actions– rejection of the memorandum of understanding and some role in instructing Mr. Hoskinson to inspect the Plaintiff's property– the question is whether there is evidence sufficient to raise an inference that he was substantially motivated by a desire to retaliate against the Plaintiffs for their complaints

and criticisms of the City and their initiation of this lawsuit.

As to rejection of the memorandum of understanding, the only protected speech made by the Plantiffs is found in verbal confrontations between the Klens and Mr. Sprague and Mr. Hawkinson. There is no evidence that Mr. Duval was aware of what the Plaintiffs said. The only statements directed at Mr. Duval–calling Mr. Duval a "boob"–occurred after he rejected the memorandum of understanding. Thus, there is no evidence from which a reasonable jury could infer that Mr. Duval's motivation in rejecting the memorandum of understanding related to anything that the Plaintiffs said. Plaintiffs offer some evidence that, construed most favorably to them, could show that Mr. Duval may have developed some animosity toward them later in the process[7], but there is nothing to indicate that *at the time* Mr. Duval rejected the memorandum of understanding he did so out of a desire to retaliate against the Klens for their confrontations with and criticisms of City employees. Therefore, although the rejection of the memorandum of understanding may have been adverse, there is insufficient evidence to show that Mr. Duval was motivated by the Plaintiffs' speech.

In contrast, Mr. Duval's authorization of the inspection occurred after an extended period of dispute between the Plaintiffs and the City, which included personal confrontations between the Klens and Mr. Duval. In addition, the inspection occurred approximately a week after the Plaintiffs served notice of their intent to sue. Given the history and close temporal proximity between these two events, there is sufficient evidence from which a jury could reasonably infer that Mr. Duval's action was substantially motivated by a desire to retaliate against the Plaintiffs.

---

[7]For example, at a meeting several months later, on June 13, 2005, Mr. Duval supposedly said that the Klens would have to pay for their "slap in the face of authority," but again this occurred months after the alleged retaliatory action occurred.

14

Because the Plaintiffs have evidence that could carry their burden of proof as to the second and third elements of the claim against Mr. Duval, summary judgment is denied. However, Plaintiff's claim is limited to Mr. Duval's actions in directing/authorizing the inspection.

### 2. Defendant Sprague

#### a. Action that would chill a person of ordinary firmness

Mr. Sprague was the plan reviewer for a portion of the plans for Plaintiffs' permit application. The Plaintiffs resubmitted their core and shell application in mid-August 2004, but Mr. Sprague did not approve his portion of the project until May 11, 2005. It appears that this claim is based entirely on the delay in Mr. Sprague's review the requirements he imposed during the approval process. Construing the evidence most favorably to the Plaintiffs, the delays and requirements could amount to an injury that would chill a person of ordinary firmness from continuing to engage in speech critical of the City and its employees.

#### b. Evidence that retaliation was a substantial motivation in taking the action

The next question is whether there is evidence that, if credited, would permit a jury to find that the Mr. Sprague's delay and requirements were motivated by a retaliatory motive. The Klens submitted their plans in August 2004 and met with Mr. Sprague in September and October 2004. During these meetings, the Klens used some abusive language toward Mr. Sprague, accusing him of lying about what additional documentation was needed and repeatedly accusing him of incompetence. In March 2005, the log showed that no review had been conducted on the plans since the prior September 2004. Given the temporal proximity between the Plaintiffs' complaints about Mr. Sprague's conduct and the cessation of work on the Plaintiffs' permit

application, and the apparently unreasonable additional requirements imposed on the Plaintiffs following their complaints, a reasonable jury could infer that this conduct was in retaliation for the Klens' criticisms. Therefore, summary judgment is denied as to the First Amendment retaliation claim asserted against Mr. Sprague.

### 3. Defendant Hawkinson

#### a. Action that would chill a person of ordinary firmness

Mr. Hawkinson was the official responsible for issuing permits. Construing the evidence most favorably to the Plaintiffs, following numerous disputes with Mr. Hawkinson and having vehemently voiced complaints about the delays and roadblocks in receiving their permit, he issued a stop work order and, thereafter, numerous citations to Ed Klen. He did this despite telling the Plaintiffs that they could do some work while waiting for the permit to issue. This evidence is sufficient to establish an injury that would chill a person of ordinary firmness from continuing to engage in criticism of the City and its employees.

#### b. Evidence that retaliation was substantial motivation in taking the action

The Plaintiffs' evidence shows that the stop work order and earliest citation were issued in December 2004, following confrontations between the Klens and Mr. Hawkinson in October and November 2004. The temporal proximity between Mr. Hawkinson's actions and the heated confrontations by the Klens could give rise to an inference that he acted in retaliation for the Klens' criticisms and complaints. In addition, citations were issued after the March 2005 meeting after which Mr. Hawkinson stated to the Klens, "so I'm an asshole, huh? We'll see about that." This statement could give rise to an inference that Mr. Hawkinson was angered by the Klens' disparagement of him and intended to take action in retaliation.

Because there is evidence from which a jury reasonably could find in the Plaintiffs' favor as to the second and third elements of the First Amendment retaliation claim as to Mr. Hawkinson, summary judgment is denied as to Mr. Hawkinson.

### 4. Defendant George

#### a. Action that would chill a person of ordinary firmness

Mr. George is the Community Services Director and Mr. Hawkinson's supervisor. Again, it is somewhat unclear what allegedly retaliatory actions the Klens contend that he took. It appears the following are possibilities: (1) instructing Hoskinson to inspect the Plaintiffs' premises in 2006; and (2) implementing a plan in 2007 to strip the construction advisory board of its power to interpret the building code.

As noted above, the unauthorized inspection resulted in a technical injury that could chill a person of ordinary firmness from continuing to complain about the Defendants' conduct and to initiate legal proceedings.

With respect to stripping the construction advisory board of its authority to interpret the building code, however, the Plaintiffs have not offered any argument or evidence as to how this caused them any injury. Accordingly, this alleged adverse action does not support the Plaintiffs' retaliation claim.

#### b. Evidence that retaliation was substantial motivation in taking the action

Focusing only on action taken by Mr. George was sending an inspector to inspect the Klens' construction, there is sufficient evidence in the record, which if credited, could support an inference that he was substantially motivated by a desire to retaliate. Although the inspection occurred nearly a year after many of the initial confrontations regarding the permit, it occurred a

week or so after the Klens notified Mr. George and the other individual defendants of their intent to sue. This close temporal proximity between this protected speech and the alleged adverse action could give rise to an inference that Mr. George acted with a retaliatory motive. Therefore, summary judgment is denied as to Mr. George on the First Amendment retaliation claim. However, the claim is limited to the action by Mr. George with regard to the inspection.

**IT IS THEREFORE ORDERED** that

(1) Defendants' Supplemental Motion for Partial Summary Judgment on First Amendment Retaliation Claim **(#158)** is **DENIED.**

Dated this 18th day of June, 2012

BY THE COURT:

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge